UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANA GONZALEZ,

    Plaintiff,

v.                                                                           Case No: 8:16-cv-1646-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff, Diana Gonzalez, seeks judicial review of the denial of her claims for a period of disability, disability insurance, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

### **A.    Procedural Background**

Plaintiff filed applications for disability insurance benefits and supplemental security income on December 5, 2012. (Tr. 216–17.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 88–131.) Plaintiff then requested an administrative hearing. (Tr. 32.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 65–87.) Following the hearing, the ALJ issued an unfavorable decision, finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 42–59.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council

denied. (Tr. 1–4.) Plaintiff then timely filed a Complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1969, claimed disability beginning on September 6, 2012. (Tr. 88–96.) Plaintiff has a ninth-grade education. (Tr. 69.) Plaintiff's past relevant work experience includes work as a housekeeping cleaner, houskeeping supervisor, school bus attendant, and kitchen helper. (Tr. 57.) Plaintiff alleged disability due to wrist pain, fibromyalgia, osteoarthritis of the knees, joint pain, muscle spasms, irritable bowel syndrome, neck pain, back and spinal pain, and hip pain. (Tr. 88, 229, 285, 355.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since September 6, 2012, the alleged onset date. (Tr. 47.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, arthritis of the knees, degenerative disc disease, and depression. (*Id.*) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 48.) The ALJ then concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). The claimant remains able to lift up to 20 pounds occasionally and lift/ carry up to 10 pounds frequently. The claimant can stand or walk for approximately 6 hours per 8-hour workday, and sit for approximately 6 hours per 8-hour workday with normal breaks. Occasional [sic] all the postural limitations, including climbing ladders, ropes, or scaffolds, climbing ramps or stairs, balancing, stooping, crouching, kneeling, and crawling. Work is limited to unskilled work, specific vocational preparation (SVP) 1 or 2, simple, routine, repetitive tasks.

(Tr. 49.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that

reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 49–50.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a housekeeping cleaner and school bus attendant. (Tr. 57.) The ALJ also found that Plaintiff could perform other work which exists in significant numbers in the national economy, including work as a deli worker, fast food worker, and cafeteria attendant. (Tr. 58.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 57–59.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision, contending that the ALJ erred by failing to give controlling weight to the opinion of her treating physician Charles Clay, D.O. (Dkt. 20.) For the reasons that follow, this contention does not warrant reversal.

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 Fed. Appx. 892, 895 (11th Cir. 2015). The medical opinion of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). Good cause exists when the doctor's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion is conclusory or inconsistent with his or her own medical records. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Thus, the Court's review is limited to whether the ALJ articulated good cause for affording Dr. Clay's opinion less than controlling weight.

Upon review of Plaintiff's medical records, Plaintiff began receiving treatment from Dr. Clay in February 2012. (Tr. 292.) In his first examination, Dr. Clay found that Plaintiff had no knee swelling, no notable varicosities, no cyanosis, no small joint pain or swelling, her gait was normal and that Plaintiff used no assistive devices for ambulation. (*Id.*) Neurologically, Plaintiff

had no weakness, no stroke or seizures, and no numbness or tingling. (*Id.*) Dr. Clay's musculoskeletal examination of Plaintiff indicated that he found no joint or back pain or muscle problems. (*Id.*) Additionally, Dr. Clay's physical examination showed that Plaintiff was in no acute distress. (*Id.*) After examining Plaintiff, Dr. Clay diagnosed her with fibromyalgia and osteoarthritis and prescribed medication including Celebrex and Lyrica. (*Id.*) Plaintiff was instructed to return to Dr. Clay's office in one month. (*Id.*)

Over two years later, on August 14, 2014, Plaintiff again received treatment from Dr. Clay. (Tr. 445–46.) Dr. Clay noted that Plaintiff was "doing well with current medications and pain level of 4." (Tr. 445.) Upon examination, Plaintiff's systems were "normal," with Dr. Clay noting, "Patient denies Raynaud's, alopecia, sicca symptoms, dysphagia, nasopharyngeal ulcer, [or] photosensitivity. There is no history of colitis, iritis, psoriasis, genitourinary abnormality, heel pain or skin rash. No recent fever, chills, night sweats, chest pain, shortness of breath, cough, anorexia or weight loss, abdominal pain, or change in bowel habits. Also no headache, visual disturbance, scalp tenderness, jaw claudication, has diffuse myalgias." (*Id.*) He also noted that he found "[n]o proximal muscle weakness, atrophy or localizing neurologic sign. DTR symmetric throughout. No peripheral edema or skin rash." (Tr. 446.) Further, Plaintiff's musculoskeletal examination indicated that Plaintiff had "all range of motion, stability, muscle strength/ tone and no joint inflammation." (*Id.*) Dr. Clay diagnosed Plaintiff with Sjogren's syndrome and fibromyalgia and she was instructed to continue with her current medications, which included venlafaxine and pilocarpine. (*Id.*)

Next, Plaintiff received treatment with Dr. Clay on September 15, 2014, and reportedly had "less muscular pain." (Tr. 443.) While she had severe diffuse myalgia, her physical examination was normal and she had no proximal muscle weakness. (*Id.*) Dr. Clay also found

that Plaintiff's musculoskeletal examination indicated that she had "all range of motion, muscle strength/ tone & no joint inflammation." (Tr. 444.) Dr. Clay diagnosed Plaintiff with Sjogren's syndrome and fibromyalgia and she was instructed to continue with her current medications. (*Id.*)

Plaintiff received her next treatment from Dr. Clay on October 2, 2014. (Tr. 441.) At that time, Dr. Clay noted that Plaintiff has had "improvement" in symptoms and "currently has decreased level of pain in her muscles." (*Id.*) Further, although Plaintiff had severe diffuse myalgia, her physical exam continued to be normal and she had no proximal muscle weakness or atrophy. (Tr. 441–42.) Plaintiff's musculoskeletal examination indicated that she had no changes in her range of motion, stability, muscle strength, or tone since her last examination. (Tr. 442.) Dr. Clay diagnosed Plaintiff with Sjogren's syndrome and fibromyalgia and she was instructed to continue with her current medications, which included venlafaxine, pilocarpine, and gabapentin. (*Id.*)

On October 24, 2014, Dr. Clay completed a Physical Residual Functional Capacity Questionnaire ("Questionnaire"), documenting his opinions concerning Plaintiff's impairments. (Tr. 448–55.) Dr. Clay stated that Plaintiff's office visits with him were intermittent. (Tr. 448.) Dr. Clay noted in the Questionnaire that Plaintiff was diagnosed with osteoarthritis, Sjogren's syndrome, and fibromyalgia, and added that she was depressed, experienced anxiety, and was constantly in pain. (Tr. 448, 450.) He opined that Plaintiff had limitations due to her impairments, including that she could stand fifteen minutes at a time, sit twenty minutes at a time, and stand/walk and sit less than two hours in an eight hour workday. (Tr. 451.) Additionally, Dr. Clay opined that Plaintiff could lift ten pounds occasionally, but never twenty pounds. (Tr. 453.) Plaintiff also had significant limitations in performing repetitive reaching, handling, or fingering and would be absent from work due to her impairments more than three times per month. (Tr. 454.)

In evaluating the opinion evidence, the ALJ reviewed Dr. Clay's Questionnaire, reasoning as follows:

> In this case, the opinion of Dr. Clay, who opined that the claimant was essentially disabled, is inconsistent with, and not supported by the substantial evidence of the record. His opinion is inconsistent with his own treatment notes, which show that her fibromyalgia was improving with medication. A review of his treatment notes, fails to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled. Moreover, the opinion is also quite conclusory, providing very little explanation of the evidence relied upon in forming his opinion.

(Tr. 56.) The record supports the ALJ's determination that Dr. Clay's opinions in the Questionnaire are inconsistent with his treatment notes. While the Questionnaire states that Plaintiff has significant limitations in performing repetitive reaching, handling, fingering, standing, sitting, walking, and lifting, his treatment notes provide no support for such limitations. Rather, Dr. Clay's treatment notes indicate that Plaintiff was doing well and had decreasing muscle pain. According to Plaintiff's treatment notes, she had a full range of motion, no proximal muscle weakness, and no numbness or tingling. Moreover, the inconsistency between Dr. Clay's medical opinions in the Questionnaire and his treatment notes are not explained in the Questionnaire. The Questionnaire is comprised of checklists and blank spaces which were largely completed with one-word responses. As a result, the ALJ aptly found that the Questionnaire provided "very little explanation of the evidence relied upon in forming [Dr. Clay's] opinion." (Tr. 56.) Accordingly, the ALJ's decision to afford Dr. Clay's opinion less than controlling weight was supported by good cause as the opinion was conclusory and inconsistent with the physician's treatment notes. *See Saternus v. Comm'r of Soc. Sec.*, 662 Fed. Appx. 883 (11th Cir. 2016) (holding that substantial evidence supported the ALJ's decision to afford little weight to the plaintiff's treating physician's opinion where the opinion was contrary to the evidence and inconsistent with the physicians' treatment records); *Flowers v. Comm'r of Soc. Sec.*, 441 Fed. Appx. 735 (11th Cir. 2011)

(determining that substantial evidence supported the ALJ's decision to afford the plaintiff's treating physicians' opinions "very little weight" where they were inconsistent with examinations showing plaintiff was "completely normal"); *Sullivan v. Comm'r of Soc. Sec.*, 353 Fed. Appx. 394 (11th Cir. 2009) (holding that substantial evidence supported the ALJ's decision to afford plaintiff's treating physician's opinion "little evidentiary weight" where the physician's opinion was contradicted by the opinions of other physicians, objective mental status findings were not documented, and the plaintiff only treated with the physician a few times in six years).

Further, as urged by the Commissioner (Dkt. 21 at 7–16), substantial evidence in the record supports the ALJ's determination that Plaintiff is not disabled. Plaintiff underwent a medical consultative examination with Richard J. Varas, M.D. on April 27, 2013. (Tr. 355–58.) Upon examination, Plaintiff was not in acute distress, she had no muscle atrophies, her fine manipulation was normal, and her grip was 4/5 for her right and left upper extremities. (Tr. 356–57.) Although her gait was slow paced and she had tenderness in her spine and shoulder, her range of motion was normal as to her elbow, forearm, wrist, shoulder, cervical spine, lumbar spine, knee, and ankle. (Tr. 357.) Her deep tendon reflexes were 5/5. (*Id.*) Dr. Varas noted that Plaintiff has irritable bowel syndrome, although her "GI examination is okay." (Tr. 358.) He also opined that Plaintiff has fibromyalgia with chronic pain syndrome and osteoarthritis and concluded that her musculoskeletal examination revealed signs compatible with fibromyalgia and carpal tunnel syndrome. (*Id.*) He recommended "better pain control" and found that "[a]ssuming that her medical problems are under control, specifically her pain she could work." (*Id.*)

Plaintiff received treatment for right shoulder pain from John Cotton, M.D., an orthopedic physician, on August 28, 2014. (Tr. 430–33.) Upon examination, Plaintiff was not in acute distress and her shoulder appeared normal, although she had tenderness in her shoulder, her shoulder

rotation was limited, and x-rays signified impingement. (Tr. 431–32.) He recommended a steroid injection and physical therapy. (Tr. 432.) Plaintiff was instructed to follow up as needed. (*Id.*)

State agency consultant R. James Mabry, M.D., reviewed Plaintiff's medical records and opined that Plaintiff had medically determinable impairments including fibromyalgia, osteoarthritis, and symptoms of irritable bowel syndrome. (Tr. 114, 116.) According to Dr. Mabry, Plaintiff's medical records document Plaintiff's antalgic gait, reduced grip strength and pain in her back, neck, left shoulder, wrist, and knee. (Tr. 116.) As a result, Dr. Mabry opined that Plaintiff has exertional limitations in lifting, carrying, standing, walking, and sitting. (Tr. 115.) He also opined that Plaintiff has postural limitations in climbing ladders, ropes, scaffolds, kneeling, crouching, and crawling. (Tr. 115–16.) The ALJ included these limitations in Plaintiff's RFC. (Tr. 49.)

Thus, while Plaintiff suffered from severe impairments, her medical records do not support the extensive limitations provided in the Questionnaire completed by Dr. Clay. The ALJ considered the medical evidence concerning Plaintiff's impairments and the ALJ's determination is supported by substantial, competent evidence. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). When the ALJ's decision is supported by substantial evidence, this Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" in the place of the ALJ's even if the evidence preponderates against the ALJ's decision. *Bloodsworth*, 703 F.2d at 1239; *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (reversing the district court because it "improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision"). Because the ALJ's decision shows that he considered and accurately summarized Dr. Clay's opinion and provided good cause for affording the opinion less than controlling weight, Plaintiff's contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on September 14, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record